IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| PAUL DSCHUHAN, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 14-710 |
| ) | Chief Magistrate Judge Maureen P. Kelly |
| DR. REGINALD HALL; PA D. AVERY; ) | |
| P. CHOROSEVIC *OTP*; BUREAU OF ) | |
| FEDERAL PRISONS, ) | Re: ECF No. 18 |
| Defendants. ) | |

## **OPINION AND ORDER**

Plaintiff, Paul Dschuhan, ("Plaintiff"), a former inmate at the Federal Correctional Institution Butner Low in North Carolina ("FCI Butner"), brings this civil rights action, alleging that Defendants were deliberately indifferent to his medical needs. Presently before the Court is a Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed by Defendants Dr. Reginald Hall ("Defendant Hall"), PA D. Avery ("Defendant Avery"), P. Chorosevic OTP ("Defendant Chorosevic") and the Federal Bureau of Prisons ("Defendant BOP"). For the following reasons set forth below, the Motion to Dismiss, ECF No. 18, is granted.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Proceeding *pro se*, Plaintiff filed the operable Complaint on December 18, 2014. ECF No. 12. Plaintiff alleges that he was imprisoned at FCI Butner from February 2012 until December 2013. ECF No. 12, ¶ 4. On June 16, 2012, while in the recreational yard, Plaintiff broke the radial head on his left elbow. Id. ¶ 5. Plaintiff underwent several x-rays, MRIs and CT scans in connection with the injury. Id. ¶ 9. He was given an arm sling, one injection of Cortisone and pain medication. Id. Defendant Hall recommended surgery to repair the radial

head, but refused to perform such surgery. Id. ¶ 13. Defendant Avery also recommended surgery. Id. ¶ 9. Defendant Chorosevic terminated Plaintiff's occupational therapy due to Plaintiff's complaints of pain. Id. ¶ 15.

On July 17, 2012, Plaintiff was moved to the Federal Medical Center at Butner ("FMC Butner") for medical evaluation and treatment and was kept there for 8 days. Id. ¶ 10. During his time at FMC Butner, Plaintiff was harassed by other inmates and staff and he received bedbug bites resulting in permanent scarring. Id.

Upon release from FCI Butner in December 2013, Plaintiff consulted an orthopedic specialist who eventually performed surgery on Plaintiff on October 15, 2014. Id. at 5.

Defendants filed the instant Motion to Dismiss and Brief in support thereof on April 8, 2015. ECF Nos. 18, 19. Plaintiff filed a Response to the Motion to Dismiss on May 12, 2015. ECF No. 23. The Motion to Dismiss is now ripe for disposition.

## II. STANDARDS OF REVIEW

### A. Consideration of Medical Records

As noted above, Defendants have styled the instant motion as a "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment." Defendants have submitted evidence in support of the instant motion, including Plaintiff's medical records from FCI Butner and declarations from Defendants Hall, Avery and Chorosevic. ECF Nos. 19-1 to 19-5. Plaintiff has submitted evidence, *i.e.*, his post-incarceration surgery-related medical records, in support of his response. ECF No. 23-1. "Whether or not to treat the motion [to dismiss] as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court." Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 335 (E.D. Pa. 1994). In exercising the Court's discretion, conversion to a motion for summary judgment is "not

warranted where there has been little or no discovery conducted by the parties" because "the parties may not be able to present enough material to support or oppose a motion for summary judgment since no factual record has yet been developed." Id. Here, the Court declines Defendants' invitation to entertain the Motion to Dismiss as a motion for summary judgment and will treat the entirety of the pending motion as a motion to dismiss.

The Court notes, however, that it may rely upon certain documents that are outside of the Complaint without converting the Motion to Dismiss into a motion for summary judgment. In particular, in reviewing a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n. 3 (3d Cir. 2004). A court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). In this case, because the undisputedly authentic medical records submitted are integral to Plaintiff's claims, the Court will consider the records without converting the pending motion into a motion for summary judgment.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal of a complaint or portion of a complaint is warranted under Rule 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires that the complaint to provide "enough factual matter (taken as true)" to suggest

the required elements of the claim presented. Phillips v. County of Allegheny, 515 F. 3d 224, 234 (3d Cir. 2008). The pleader must "'nudge his or her claims across the line from conceivable to plausible.'" Id. (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544 at 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips, 515 F. 3d at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F. 3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F. 3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

### C. *Pro Se* Pleadings

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance.").

## III. DISCUSSION

Plaintiff purports to bring his claims under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment to the United States Constitution. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

> declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

In order to succeed on a Section 1983 claim, a claimant must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). Because Plaintiff's claims concern treatment at a federal prison, there is no state actor who may be found liable under Section 1983. Plaintiff's civil rights claims against federal actors are properly brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In Bivens, the United States Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights. Bivens, 403 U.S. at 395. Bivens actions are the federal counterpart to § 1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991). The Court will consider Plaintiff's claims to be Bivens claims. See Carlson v. Green, 446 U.S. 14 (1980) (holding that a claim of an Eighth Amendment violation by prison officials may be brought in a Bivens action).

### A. Defendants Avery and Chorosevic

Defendants first assert that Defendants Avery and Chorosevic are entitled to absolute immunity as commissioned officers of the United States Public Health Service ("PHS"). PHS officers acting within the scope of their employment are immune from <u>Bivens</u> claims for personal injury. 42 U.S.C. § 233(a); <u>Hui v Castaneda</u>, 559 U.S. 799, 806 (2010). In response to this assertion, Plaintiff presents a nonsensical argument that the relevant "injury" was sustained playing basketball, not by the care of Defendants Avery and Chorosevic. Plaintiff's Complaint makes clear that he is seeking relief for personal injury stemming from the medical care he received from, *inter alia*, Defendants Avery and Chorosevic. ECF No. 12, ¶ 22. The status of these defendants as PHS officers renders them immune from claims like Plaintiff's. Accordingly, Plaintiff's claims against Defendants Avery and Chorosevic are dismissed with prejudice.

### B. Defendant Federal Bureau of Prisons

Defendants also assert that Defendant BOP has absolute immunity from Plaintiff's <u>Bivens</u> claims based on Defendant BOP's status as a federal agency. Indeed, the United States Supreme Court has held that a federal prisoner's remedy for a constitutional deprivation is limited to a <u>Bivens</u> claim against the individual officer involved; a prisoner may not bring a <u>Bivens</u> action against the United States or BOP. <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 72 (2001). Accordingly, Plaintiff's claim against Defendant BOP is dismissed with prejudice.

### C. Defendant Hall

#### 1. Failure to State Deliberate Indifference Claim

Defendants assert that Plaintiff's allegations cannot support a claim of deliberate indifference.[1]

##### a. Deliberate Indifference

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Deliberate indifference consistently has been held to a standard above "mere allegations of malpractice." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). However, deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Id. (citations omitted). Further, "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment . . . .'" Id. at 347 (citations omitted).

##### b. FCI Butner Medical Records

A fair reading of Plaintiff's Complaint makes clear that his claim is based on the premise that Plaintiff suffered pain and injury because Defendants were deliberately indifferent to his need for elbow surgery. However, a full review of Plaintiff's medical records reveals that the response of Defendants to Plaintiff's elbow injury that was lengthy, multi-faceted and

---

[1] In light of this Court's ruling dismissing the claims against Defendants Avery, Chorosevic and BOP on the basis of immunity, the analysis of the deliberate indifference claim is limited to the claim against Defendant Hall, the remaining defendant.

7

comprehensive. He was evaluated and treated by medical personnel including a nurse practitioner, a physician's assistant, an orthopedic physical therapist, an occupational therapist, a primary care physician and Defendant Hall, an orthopedist. His elbow was tested via x-ray, CT scan and MRI, the results of which were reviewed and acted upon.

Defendant Hall's treatment history of Plaintiff, as gleaned from the medical records, is as follows. Defendant Hall first saw Plaintiff on June 20, 2012. ECF No. 19-2 at 31. His notes indicate that his assessment of the necessity for surgery was inconclusive at that time, noting that additional information was required before a decision could be made as to whether the injury was "fixable." Id. Defendant Hall's notes further indicate that he did not recommend immediate surgery due to abrasions present on Plaintiff's arm. Id. Defendant Hall noted that by the time the abrasions healed, which he estimated to be two to three weeks, the injury could be healing. Id. Defendant Hall indicated that he informed Plaintiff of the foregoing and instructed him on movement restrictions. Id. Defendant Hall ordered pain medication for Plaintiff. Id. at 32.

On June 25, 2012, Defendant Hall consulted with Dr. Winters,[2] who concurred with Defendant Hall that the presence of abrasions was concerning and that their healing time would allow for the fracture to heal as well. ECF No. 19-2 at 33. Defendant Hall noted: "[t]he final recommendation was to allow it to heal and see how he does. He potentially could have something done later." Id.

On September 6, 2012, Defendant Hall saw Plaintiff to assess the healing of the fracture. ECF No. 19-3 at 28. Defendant Hall reported "good progress with motion," and found Plaintiff's complaints of pain to be out of proportion based on Defendant Hall's experience. Id. at 29.

---

[2] Defendant Hall asserts that this physician is an orthopedist with specific training in hand/upper extremity surgery. ECF No. 19-2 at 4.

Defendant Hall ordered a CT scan and noted that he would consider a steroid injection if possible. Id. He directed Plaintiff to take Motrin and Tylenol for pain. Id.

On September 20, 2012, Defendant Hall reviewed the CT scan, noting bone healing and the possibility for a steroid injection. Id. at 32.

On October 18, 2012, Plaintiff presented to Defendant Hall with complaints of pain. ECF No. 19-3 at 38. Defendant Hall ordered two types of daily medication to control pain. Id. at 39. He also recommended an injection but delayed delivery of the injection due to a question from Plaintiff about its manufacturing process. Id. Defendant Hall also counseled Plaintiff on activity modification and the plan of care. Id.

On December 20, 2012, Defendant Hall treated Plaintiff with a steroid injection into Plaintiff's elbow to address his persistent pain. Id. at 43.

On August 8, 2013, Defendant Hall saw Plaintiff for complaints of persistent pain. Id. at 48. Defendant Hall noted that Plaintiff reported he had tried aspirin, Tylenol and ibuprofen from the commissary but had stopped taking anything due to stomach irritation. Id. Defendant Hall noted that he "had trouble identifying those meds on [Plaintiff's] commissary list." Id. Defendant Hall recommended an MRI of the elbow, but declined to prescribe pain medication as he believed the pain should respond to over-the-counter medication. Id. at 49.

### c. Analysis

Plaintiff alleges that Defendant Hall demonstrated deliberate indifference to Plaintiff's medical needs by refusing to perform necessary surgery. The sole allegations concerning the necessary nature of the surgery are: (1) Defendants Hall and Avery both recommended surgery; and (2) Plaintiff had surgery after his release from prison. The first allegation is flatly contradicted by the contemporaneous notes of Defendants Hall and Avery contained in the

medical records. As set forth above, Defendant Hall considered, but never recommended, surgery. Defendant Avery, a physical therapist, noted on June 20, 2012, following his first evaluation of Plaintiff's injury: "Abrasions along lateral and dorsal forearm preclude surgical management at this time. Pt expresses preference for non-operative treatment as well." ECF No. 19-2 at 27.

Further, although Plaintiff's alleges that Dr. Robert Kaufmann,[3] an orthopedic specialist, performed surgery on him approximately ten months after his release from prison, neither the allegations in the Complaint nor the medical records Plaintiff provides from Dr. Kaufmann indicate that earlier surgery should have been performed.

In this case, the Court assumes that Plaintiff's injury and resultant pain constituted a serious medical need. However, the medical records clearly establish that the treatment provided by Defendant Hall was consistent with a conservative but comprehensive treatment plan. Multiple diagnostic evaluations were used, including CT scan and MRI. Several different treatment options were employed, including physical therapy, occupational therapy, over-the-counter and prescription medication and steroid injection. Although surgery was ultimately performed, there is no indication that earlier surgery would have provided relief or that the failure to perform surgery was a result of deliberate indifference to Plaintiff's medical needs in exchange for an easier and less effective treatment. Under these circumstances, it is apparent that the record in this case shows, at best, a difference over opinion over the course of proper medical treatment. Because Plaintiff has failed to allege facts evidencing deliberate indifference, the claim against Defendant Hall is dismissed.

---

[3] The Court will utilize the spelling of Dr. Kaufmann's name as reflected in his Operative Report, ECF No. 23-1, rather than the spelling in the Complaint.

### 2. Futility of Amendment

When dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint unless it would be inequitable or futile to do so. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Because Plaintiff's allegations, coupled with the medical records provided to the Court, demonstrate that Plaintiff cannot sustain a deliberate indifference claim, leave to amend would be futile. Accordingly, Plaintiff's claim against Defendant Hall is dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the following Order is entered:

### ORDER

AND NOW, this 17 day of August, 2015, IT IS HEREBY ORDERED that Motion to Dismiss filed by Defendants Dr. Reginald Hall, PA D. Avery, P. Chorosevic OTP and the Federal Bureau of Prisons, ECF No. 18, is GRANTED and the Clerk is directed to mark the case closed.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, an appeal from this Order must be taken within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Paul Dschuhan
11151 Mockingbird Drive
North Huntingdon, PA 15642


All Counsel of Record Via CM-ECF